Filed 2/25/13  Dept. of Child Support Serv. v. Powell CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIAN K. POWELL,<br><br>    Defendant and Appellant. | 2d Civil No. B238444<br>(Super. Ct. No.BD086977)<br>(Los Angeles County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |
| In re Marriage of CHANTAL and BRIAN K. POWELL.<br><br>CHANTAL POWELL,<br><br>    Respondent,<br><br>v.<br><br>BRIAN K. POWELL,<br><br>    Appellant;<br><br>DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>     Respondent. | (Super. Ct. No. SD019049)<br>(Ventura County) |

THE COURT:

It is ordered that the opinion filed herein on February 7, 2013, be modified as follows:

On the listing of counsel page, the first name "Richardo" is changed to "Ricardo," so that the paragraph reads:

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Linda M. Gonzalez, Supervising Deputy Attorney General, Ricardo Enriquez, Deputy Attorney General, for Plaintiff and Respondent Department of Child Support Services.

There is no change in the judgment.

Filed 2/7/13  Depart. Child Support Serv. v. Powell CA2/6 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIAN K. POWELL,<br><br>    Defendant and Appellant. | 2d Civil No. B238444<br>(Super. Ct. No.BD086977)<br>(Los Angeles County) |
| In re Marriage of CHANTAL and BRIAN K. POWELL. | (Super. Ct. No. SD019049)<br>(Ventura County) |
| CHANTAL POWELL,<br><br>    Respondent,<br><br>v.<br><br>BRIAN K. POWELL,<br><br>    Appellant;<br><br>DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Respondent. | |

Brian K. Powell (Brian) appeals an order denying his motion to vacate a 1993 default judgment for child support in favor of respondent Department of Child Support Services (DCSS).[1] Brian also filed a motion to quash service of process claiming there was no valid service of the summons and complaint by substituted service. We conclude, among other things, that: 1) the trial court correctly ruled that his motion to vacate the default judgment was untimely, 2) the court did not abuse its discretion in denying equitable relief to vacate the default judgment, 3) the court did not err by denying his motion to quash service, and 4) Brian has not shown the court erred by finding that the substituted service at his mailing address was valid. We affirm.

FACTS

Brian and Chantal Powell (Chantal) were married in 1987. They had two children. In 1992, they separated.

Chantal contacted the Child Support Division of the Los Angeles County District Attorney's Office (CSDLA) for assistance in obtaining child support. On August 27, 1992, the CSDLA filed a civil action for support for the minor children against Brian in the Los Angeles County Superior Court.

On November 30, 1992, Fred Sloan, a registered process server for the CSDLA, served Brian by substituted service. (Code Civ. Proc., § 415.20.) He left a copy of the summons and complaint with Tracy Martine at a residence in Sherman Oaks, California. Martine told him that Brian did not live there, but he received his mail there.

Brian did not answer the complaint. A default was entered against him on March 11, 1993. A judgment establishing Brian's monthly child support obligation was entered on April 20, 1993.

Chantal filed for dissolution of her marriage in the Ventura County Superior Court on October 14, 1997. A process server certified that Brian was served

---

[1] We shall refer to the parties by their first names, not from disrespect but to ease the reader's task.

with the dissolution petition at California Lutheran University 11 days later. Brian did not answer and a default judgment was entered against him.

The Los Angeles County child support case was "registered in Ventura County on March 2, 1999," and it was consolidated with the dissolution action.

On April 16, 1999, the Ventura County District Attorney (Ventura DA) "instituted a wage assignment against [Brian's] wages with California Lutheran University."

On December 7, 2000, the Ventura DA filed a motion to determine the amount of past due child support Brian owed. On June 11, 2001, Brian requested a continuance of that motion. The continuance was granted.

In 2001, the child support enforcement duties of the CSDLA and county district attorneys were transferred to the DCSS, a state agency, and its local county affiliates. (Fam. Code, §§ 17303, 17304, 17305.)

On October 29, 2010, Brian filed a motion to quash service and to set aside the March 11, 1993, default and the April 20, 1993, judgment. He declared he first learned about the child support judgment on July 9, 2010, and he claimed the substituted service was invalid.

Donald Kemp, an attorney with the Los Angeles County Child Support Services Department, filed an opposition declaration. He said Brian had numerous contacts with the child support enforcement agencies regarding the judgment in 1999, 2000 and 2001. Brian made payments on the judgment in 1994. In October 1999, he called to dispute the child support amount. Brian said he lost his job in 1993, and he went to CSDLA to "explain his situation in an unsuccessful effort to modify the amount."

Chantal declared that Brian contacted her in 1995. Brian was "very upset he had been pulled over for speeding and they confiscated his Drivers License for 'back support.'"

3

The trial court denied the motions.  It found that Brian was not credible, his motions were untimely, and he did not act with reasonable diligence.  It said he was aware of the proceedings in 1999 or earlier.  It ruled the substituted service was valid.

DISCUSSION

*An Untimely Motion to Vacate*

Brian claims the trial court erred by ruling that his motion to set aside the default judgment was untimely.  We disagree.

The default judgment was entered on April 20, 1993.  Brian filed his motion to vacate on October 29, 2010.

Family Code section 3691, subdivision (c)(1) provides that:  1) where "service of a summons has not resulted in notice to a party in time to defend the action for support" and a default judgment is entered, 2) the party subject to the judgment may file a "motion to set aside the default," but 3) that motion "shall be served and filed within a reasonable time, *but in no event later than six months after the party obtains or reasonably should have obtained  notice . . .* of the support order."  (Italics added.)

Here there was a 17-year delay between the judgment and the motion to vacate.

Brian claims he did not discover a judgment was entered against him until July 2010.  The trial court said he was not "credible."  It found he "did not act with reasonable diligence" and that he "was aware of the proceedings" in 1999 or "earlier."

Brian selected some, but not all, documents filed by the parties to be included in the clerk's transcript.  The trial court however reviewed all the court files.  It found that documents in the court records refuted Brian's claims.  The court also found that "exhibits" were "missing" from Brian's motion.  Brian has the burden to produce a complete record.  Because he did not do so, we must presume the court's findings are supported, in part, by documents not before us.  (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.)   But even on the incomplete record Brian has filed with this court, he has not shown error.

4

Brian claims the trial court should have relied on the portion of his declaration where he stated he did not discover the default judgment until 2010.

But Kemp's declaration shows that: 1) Brian made payments on the judgment in 1994; 2) in June 1999, Brian called the Ventura County DCSS stating "there was a Los Angeles County order" and he asked about "a release of his driver's license"; 3) in 1999, Brian visited the "Ventura office in person and asked how to get credit for direct payments he had made," 4) in October 1999, Brian "called Ventura disputing his balance"; 5) in March 2000, Brian stated he wanted a support "modification"; he wanted a "continuance to hire a lawyer, but he was 'flat broke' because Ventura had levied his bank account."

Chantal's declaration shows that Brian knew about the support judgment as early as 1995. A declaration by Jacqueline Tilkens, an attorney with the Ventura County DCSS, reflects that Brian had numerous contacts with the Ventura County child support division between 1997 and 1999. In 1999, it received "paperwork" he signed with an "attached paystub."

This case was tried on conflicting declarations. "Just as with live testimony, it was for the trial court to consider the declarations" and resolve the disputed issues. (*Fredrics v. Paige* (1994) 29 Cal.App.4th 1642, 1647.) "[W]e must resolve all evidentiary conflicts in favor of the prevailing party . . . ." (*Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 744.) "We may not insert ourselves as the trier of fact and reweigh the evidence." (*Id.* at p. 745.) Credibility was a matter exclusively for the trial court to decide. (*Church of Merciful Saviour v. Volunteers of America, Inc.* (1960) 184 Cal.App.2d 851, 856; *Lohman v. Lohman* (1946) 29 Cal.2d 144, 149.) ""When the issue is tried on affidavits . . . and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.'"" (*Fredrics*, at p. 1647.) Brian has not shown the trial court erred in finding he did not act with reasonable diligence in moving to set aside the default judgment.

The court could reasonably find that he was at least 10 years beyond the statutory deadline.

*Relief in Equity*

Brian contends the trial court erred by not exercising its equitable power to grant relief from the judgment. He claims his case is analogous to extrinsic fraud cases where defaulted parties are granted relief after exceeding the statutory deadlines for relief from default.

Where "'a motion to vacate a default judgment is made' beyond the statutory deadline for relief, it is "'directed to the court's inherent equity power.'" (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 314.)

But a party seeking equitable relief "must satisfy three elements: 'First, the defaulted party must demonstrate that [he or she] has a meritorious case. Secondly, the party . . . must articulate a satisfactory excuse for not presenting a defense to the original action. Lastly, the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.'" (*Gibble v. Car-Lene Research, Inc.*, *supra*, 67 Cal.App.4th at p. 315.) Brian cannot meet this standard because the court found he did not act with due diligence. Moreover, he did not testify or present admissible evidence at the hearing to show he had a meritorious defense or to demonstrate why laches did not bar equitable relief. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 345.)

There are specific time limits for equitable relief involving motions to set aside support orders. The Court of Appeal in *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 910, said the "'traditional "equitable" set-aside relief is *statutorily preempted* with regard to *support orders*.' [Citation.] [S]ection 3691 is the exclusive set-aside remedy." Consequently, based on the trial court's findings, Brian's motion was filed well beyond that statute's six-month limitations period from the date of discovery. (Fam. Code, § 3691, subd. (c)(1).)

But even apart from section 3961, our Supreme Court has repeatedly held that "a motion to vacate a judgment *should not be granted* where it is shown that the

6

party requesting equitable relief has been guilty of inexcusable neglect or that laches should attach." (*In re Marriage of Park*, *supra*, 27 Cal.3d at p. 345, italics added.)

Brian cites *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215. There the Court of Appeal said, "When a judgment or order is obtained based on *a false return of service*, the court has the inherent power to set it aside [citation], and a motion brought to do so may be made on such ground even though the statutory period has run." (*Id*. at p. 1229, italics added.) But it also said, "Because of the strong public policy in favor of the finality of judgments, equitable relief from a default judgment or order is available *only in exceptional circumstances*." (*Id*. at pp. 1229-1230, italics added.) In *Gorham*, the exceptional circumstances involved a process server who committed "perjury" in his declaration of service. He falsely claimed he served Gorham at one address at a time when "Gorham was in custody in jail." (*Id.* at p. 1231.) The court said this "constitutes evidence of an *intentional false act* that was used to obtain fundamental jurisdiction over Gorham." (*Id.* at p. 1232, italics added.)

Here the trial court found that "the facts of the instant case" did not fall within the *Gorham* rule. Brian suggests this case is analogous to *Gorham*, but he did not produce evidence to show that the process server committed perjury or made a falsified return of service. At the hearing on his motion, Brian did not testify. His attorney did not call any witnesses or present evidence. Instead, he relied on Brian's declaration to claim the summons was served at the wrong address and that the process server acted unreasonably.

But reliance on Brian's declaration does not assist him on appeal because the trial court found he was not credible. It said, "His lack of credibility and failure to act diligently precludes this court from granting him relief of any equitable nature." Many of the arguments Brian advances are based on facts he alleged in his declaration. But the court could disregard them. "[A] trial judge has an inherent right to disregard the testimony of any witness . . . when he [or she] is satisfied that the witness is not telling the truth . . . ." (*La Jolla Casa De Manana v. Hopkins* (1950) 98 Cal.App.2d

7

339, 345-346.) That is the case even where appellant's declaration is uncontradicted. (*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 460; *Lohman v. Lohman*, *supra*, 29 Cal.2d at p. 149.)

Brian claims "the trial court failed to allow [him] to present evidentiary testimony . . . ." The record does not support him. At the morning session of the hearing on Brian's motion, the court said it intended to have an evidentiary hearing. Counsel for the DCSS proposed a procedure for the afternoon session. She said the court: 1) could consider additional "exhibits" and 2) "[we] can *argue it*. And the Court *can take it under submission for ruling*." (Italics added.) At this point Brian's counsel had the opportunity to advise the court that he disagreed and wanted Brian to testify. Instead, he told the court, "That's fine, your Honor." Consequently, Brian is estopped to claim error. (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000; *People v. Level* (2002) 97 Cal.App.4th 1208, 1213.)

*The Motion to Quash the Substituted Service*

Brian claims his motion to quash service should have been granted because the trial court never acquired jurisdiction over him. He claims the substituted service was invalid because the process server went to the wrong address and did not act with reasonable diligence. He contends the court consequently erred by denying his motion. We disagree.

*Substituted Service Requirements*

The trial court found, "The affidavit of process server Fred Sloan establishes that he went to the address on file with the District Attorney's Child Support Division. He was informed by a person at that address, Tracy Martine, that [Brian] did not reside at that address, but that *he received mail there*. Mr. Sloan left a copy of the documents at that address. In light of the fact that Mr. Sloan was advised [Brian] did not reside at that address, he determined that further attempts at personal service at that location would be futile. He then mailed a copy of the Summons and Complaint to that

8

address and completed the proof of service and affidavit."  (Italics added.)  The court ruled this substituted service complied with Code of Civil Procedure section 415.20.

Code of Civil Procedure section 415.20, subdivision (b) provides, in relevant part, that "a summons may be served by leaving a copy of the summons and complaint at the . . . usual mailing address . . . in the presence of . . . a person apparently in charge of his or her . . . usual mailing address . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and complaint . . . at the place where a copy of the summons and complaint were left."

*Reasonable Attempts at Service*

Brian claims Sloan did not act reasonably because:  1) Sloan did not have valid address information, and 2) Sloan did not make additional attempts to personally serve him at his office or elsewhere after serving Martine.  But the trial court could find that Sloan acted reasonably.  It noted that he obtained the address information from a governmental source the court found to be reliable - the District Attorney's Child Support Division records.  Given the incomplete record, we must defer to the trial court's findings on this issue.  (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532; see also Evid. Code,§ 664.)  Moreover, the record reflects that when Sloan arrived at the residence he learned that Martine knew who Brian was because she said Brian received mail there.  Consequently, the court could find that Martine essentially confirmed that the mailing address information in CSDLA's records was correct.  The court also found Sloan did not have to make additional attempts to serve Brian at that address because Martine confirmed that he did not live there.  The court was correct.  "It would be futile for the process server to return to that address two more times and attempt service at a residence where [Brian] no longer lived." (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 545.)

Brian claims there were insufficient attempts to locate him at other addresses.  A process server must act reasonably.  But he or she is "not required to 'exhaust all avenues of obtaining a current address.'" (*Ellard v. Conway*, *supra*, 94

9

Cal.App.4th at p. 545.) Sloan declared that he did not know of any other address for service. Citing to his own declaration, Brian claims Sloan and CSDLA could have served him at other places. But the court acted within its authority by not relying on Brian's declaration after finding he was not credible. In his declaration, Brian said that because he worked at the Los Angeles Police Department (LAPD), the CSDLA should have known his office address because it was also "his employer at the time." He said, "I was employed by *the same entity that filed suit against me*." (Italics added.) But the trial court found these assertions were false. It noted that LAPD is a city agency, but CSDLA is part of county government.

There is evidence showing efforts were made to locate Brian's address. The CSDLA sent a letter to LAPD in 1992 asking, among other things, for Brian's home address. But LAPD responded without providing any home or office address information or any phone number where he could be reached. Brian suggests Sloan could have obtained his home address by simply contacting the LAPD. But that is not the case. (*Hackett v. Superior Court* (1993) 13 Cal.App.4th 96, 99 [court order requiring disclosure of sheriff deputy's home address was vacated because that information is confidential].)

Sloan filed a declaration of due diligence with the proof of service. He declared he was unable to make personal service on Brian because his home and office address were not known to him. He said he made a "'due search, *careful inquiry* and diligent attempt at the usual place of receiving mail,'" to attempt "personal service" on Brian. (Italics added.) Brian claims Sloan was not credible. But credibility was a matter for the trial court and it implicitly found Brian failed to show that Sloan did not act "in good faith." (*Davis v. Allstate Ins. Co.* (1989) 217 Cal.App.3d 1229, 1232.)

Moreover, Karen Hostetler, an agent of the district attorney, signed the declaration of mailing on the district attorney's request to enter default. She declared that on March 3, 1993, "14056 Valleheart Dr., #316 Sherman Oaks, Ca 91423" was Brian's "last known address." That supports Sloan's claims. The address she mentioned

10

is the same service address listed in Sloan's declaration. In the 1993 support judgment, the trial court listed "14056 Valleyheart Drive # 316 Sherman Oaks, California 91423" as Brian's address. (*Doran v. Burke* (1953) 118 Cal.App.2d 806, 807 ["Recitals in a judgment are presumed to be true and correct"].) The superior court clerk's "certificate of mailing" of the April 22, 1993, notice of entry of judgment also lists that same Sherman Oaks address. Sloan's and Hostetler's declarations and these court records support the trial court's findings. (Evid. Code. § 664; *Doran*, at p. 807; *Christie v. Superior Court* (1933) 218 Cal. 423, 425.)

*Inadequate Declaration of Service*

Brian claims the service was invalid because Sloan's declaration did not contain a reference to Martine's age. He contends it consequently did not comply with Code of Civil Procedure section 417.10, subdivision (a). That section provides, in relevant part, "Proof that a summons was served on a person within this state shall be made: [¶] (a) If served under Section . . . 415.20 . . . by the affidavit of the person making the service showing the time, place, and manner of service and facts showing that the service was made in accordance with this chapter. *The affidavit shall recite or in other manner show the name of the person to whom a copy of the summons and of the complaint were delivered,* and, if appropriate, his or her title or the capacity in which he or she is served, and that the notice required by Section 412.30 appeared on the copy of the summons served, if in fact it did appear." (*Ibid.*, italics added.)

The person served by substitute service must be at least 18 years of age. But the portion of Code of Civil Procedure section 417.10 describing what the "affidavit shall recite" does not make reference to the person's age. It requires the person's name "and, if appropriate, his or her title." (*Id.*, subd. (a).) Sloan complied because he named Martine as the person who received the summons and complaint.

The prior sentence in this section requires "facts showing that the service was made in accordance with this chapter." (Code Civ. Proc., § 417.10, subd. (a).) Brian claims this provision must be strictly construed to mean that if the affidavit does

11

not mention Martine's age the service is invalid. But in Sloan's declaration he said the form of service was "substituted service." The printed proof of service court form attached to the declaration describes the requirements of substituted service, including that the recipient must be "18 years of age." Brian has not shown why the trial court could not reasonably infer that Sloan's reference to "substituted service" implicitly referred to the substituted service requirements in that attached court form.

But even if Sloan made an omission, courts have not applied the strict construction analysis Brian proposes. In *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, the Court of Appeal rejected a claim that service was void because the affidavit did not contain the name of the person served as required by section 417.10. The "proof of substituted service" showed service on "'John Doe, co-resident.'" (*Id.* at p. 179.) The court noted that prior case law had required "strict compliance for completion of constructive service." (*Id*. at p. 184.) But current law uses a "liberal construction rule" so that service will not be defeated for "minor deficiencies." (*Ibid.*) The court said the purpose of this provision "is to enable the recipient to be located in the future, should the claim of service be challenged." (*Ibid.*) Here that goal was achieved by naming Martine and listing the date, place and manner of service.

Brian relies on what he considers to be Sloan's incomplete service affidavit. But such an omission or irregularity does not automatically render the service void. (*Trackman v. Kenney*, *supra*, 187 Cal.App.4th at p. 184; *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1204 [omission in service declaration did not render service void]; *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778; *Hershenson v. Hershenson* (1962) 205 Cal.App.2d 382, 385; see also *Bell v. Bell, Kalnick, Klee & Green* (N.Y. 1998) 246 A.D.2d 442, 443 ["The defects in the affidavit of service do not defeat an otherwise properly commenced action, but are mere nonjurisdictional irregularities"].) "Where a reasonable attempt has been made to comply with a statute in good faith, and there was no attempt to mislead or conceal, the

doctrine of substantial compliance holds that the statute may be deemed satisfied."
(*Davis v. Allstate Ins. Co.*, *supra*, 217 Cal.App.3d 1229, 1232.)

Sloan said "the substituted service was *properly* made" and he described Martine as the "*person in charge* of usual place of receiving mail." (Italics added.) From Sloan's declaration, the trial court could find that Martine both resided at the place where Brian received his mail and knew who Brian was. (Evid. Code, § 647; *Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1428.) Brian did not allege that he did not know who Martine was and he admitted he had previously lived at that address. The trial court could reasonably infer that if Brian believed Martine was not 18, he would have provided evidence on that issue. Because of his connection to that residence and because the court found he received mail there, the court could find that he was in the best position to know Martine's age. (Evid. Code, § 413; *Moss v. Superior Court* (1998) 17 Cal.4th 396, 427.)

Moreover, as the party challenging a registered process server's declaration post judgment, Brian had the burden to produce evidence. (Evid. Code, § 647; *Palm Property Investments, LLC v. Yadegar*, *supra*, 194 Cal.App.4th at p. 1427 [registered process server's proof of service creates "'a presumption affecting defendant's burden of producing evidence'"]; *Christie v. Superior Court*, *supra*, 218 Cal. at p. 425.) A party who claims the person served is not the proper age has the burden to present proof on that issue. (*Christie*, at p. 425; *Woods v. Congress Financial Corp.* (Ga.Ct.App. 1979) 253 S.E.2d 834, 835; *Holmen v. Miller* (Minn. 1973) 206 N.W.2d 916, 919-920.)

The parties cite no California cases directly on point. But courts in other jurisdictions have discussed the issue of defective service when the affidavit of service did not mention the age of the person served. In *Woods v. Congress Financial Corp.*, *supra*, 253 S.E.2d at page 835, a deputy sheriff's substituted service declaration listed the date, place and manner of service. But it did not include the age of the person served, nor did it contain the statutory language that the person was "of suitable age and

13

discretion" to be served with process. The defaulted defendant claimed the declaration was defective, but it did not present evidence regarding the age of the person served at the hearing to challenge service. The appellate court found the burden was on the party challenging service to prove the person served was not of suitable age. Because the defendant did not meet that burden, service was presumed to be valid. (*Ibid*.)

Here Brian presented no evidence about Martine's age at the hearing, and he did not claim Martine was under 18 in his declaration. He made no offer of proof at the hearing that he had evidence to show that Martine was under 18. The trial court could find these omissions undermined Brian's suggestion that Sloan may have served an underage person. (Evid. Code, §§ 413, 647; *Christie v. Superior Court*, *supra*, 218 Cal. at p. 425; *Woods v. Congress Financial Corp.*, *supra*, 253 S.E.2d at p. 835.)

The trial court could reasonably rely on the rebuttable presumption that official duty is regularly performed and that Sloan, as an agent of the district attorney and a registered process server, would not be expected to serve a minor. (Evid. Code, §§ 647, 664; *Woods v. Congress Financial Corp.*, *supra*, 253 S.E.2d at p. 835.) The court entered the 1993 support judgment relying on the "documents" presented by the district attorney. "The presumption arising from the former judgment is, of course, in favor of the regularity of the service, and the burden is on the party attacking it." (*Christie v. Superior Court*, *supra*, 218 Cal. at p. 425.) The court could and did find Brian did not rebut that presumption.

*Other Grounds for Affirmance*

Moreover, even had Brian shown that Sloan made errors in performing service and on his proof of service, the result does not change. His motion to quash was included as part of his motion to vacate. But he has not shown why the trial court could not reasonably find that the motion to quash was also barred as untimely. (Fam. Code, § 3691, subd. (c)(1); *In re Marriage of Zimmerman*, *supra*, 183 Cal.App.4th at p. 910; *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1186; *In re Marriage of Park*, *supra*, 27

14

Cal.3d at p. 345; *Fidelity Bank v. Kettler* (1968) 264 Cal.App.2d 481, 487 [motion to quash barred by "a distinct badge of laches"].)

Moreover, the trial court found that in 2001, Brian sought and obtained a continuance of the Ventura DA's motion to determine the amount of his back child support. Brian told the district attorney's office that he needed a continuance as he was seeking a modification of the amount owed. The trial court said the court's minute order reflects the hearing "was continued '*On Motion of Mr. Powell* (per phone call to D.A.).'" (Italics added.) Brian has not shown why the court could not find that his successful motion for a continuance of a hearing on the merits constituted a general appearance that waived any challenges to service. (*366-386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1194, fn. 2*; Zobel v. Zobel* (1907) 151 Cal. 98, 101 ["[A]n appearance for any other purpose than to question the jurisdiction of the court is general. . . . It is difficult to perceive how the application of the defendant for a continuance of the hearing could operate other than as a personal appearance in the case"].)

We have reviewed Brian's remaining contentions and we conclude he has not shown error.

The judgment is affirmed. Costs on appeal are awarded in favor of respondent DCSS.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:



YEGAN, J.



PERREN, J.

15

JoAnn Johnson, Commissioner

Superior Court County of Ventura

_____

Stolar Associates, Steven R. Stolar, Evan L. Bardo for Defendant and Appellant Brian K. Powell.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Linda M. Gonzalez, Supervising Deputy Attorney General, Richardo Enriquez, Deputy Attorney General, for Plaintiff and Respondent Department of Child Support Services.

No appearance for Respondent Chantal Powell.